

ORIGINAL
FILED

SEP 8 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   PETER A. STROTZ, Bar No. 129904
      pstrotz@filicebrown.com
2   WILLIAM E. STEIMLE, Bar No. 203426
      wsteimle@filicebrown.com
3   LEE L. KASTER, Bar No. 208743
      lkaster@filicebrown.com
4   **FILICE BROWN EASSA & MCLEOD LLP**
    1999 Harrison Street, Suite 1800
5   Oakland, California  94612-3520
    Telephone:     510.444.3131
6   Facsimile:      510.839.7940

7   Attorneys for Defendants
    ASTRAZENECA LP
8   ASTRAZENECA PHARMACEUTICALS LP

E-filing

9

10              **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

12                 **SAN FRANCISCO DIVISION**

MEJ

13   KIMBERLY KESSLER, VICTORIA          Case No.
     JOHANSKY, MARGARET JOHNSON,
14   BETTYE JOINER, ERNEST JONES,        **CV 09        4149**
     THOMAS JONES, MARK JONES,
15   SHERRY JULY, JEANETTE KELLIE,       **NOTICE OF REMOVAL**
     CARLA KEMPLIN, JUDY
16   KENNEBREW, ROBERT KENNEDY,
     JR., MICHAEL KILEY, DONALD
17   KINCHEN, TERRI KING, ANGELA
     KNOPP, THOMAS KOENER, JR.,
18   ALVIN LAFOLLETTE, RICHARD
     LAKE, THERON LAWSON, BRENT
19   LEHMAN, TINA LEJMAN, MICHAEL
     LEPPANEN, LAFREDIA LESTER,
20   DIANE LUNKINS, RICHARD
     MARSHALL, TERESA MARTIN,
21   GEORGE MASTRIANNI, LINDA
     MATHEWS, GENNARO MATTIACCIO,
22   DIANE MAYS, TERESA MCCLEARY,
     VALERIE MCNEAL, DOROTHY
23   MEDLIN, KATHLENE MELVIN,
     CARLOS MENDEZ, JAMES
24   MITHCELL, ROSANNE
     MITOROTONDO, TAMI
25   MOELLENBERNDT, JEANNIE
     MOLNAR, ANITA MONEY, WANDA
26   MONKS, MICHELLE MOORE, DONNA
     MOORE, RANDY MOORE, MISTY
27   MORCEAU, JILL MORGAN, ME AE
     MOSLEY, ANNIE MURRAY, TIMOTHY

28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

1    MURRAY,

2                              Plaintiffs,

3    v.

4    ASTRAZENECA LP, ASTRAZENECA
     PHARMACEUTICALS LP, MCKESSON
5    CORPORATION,

6                              Defendants.

7    TO:    United States District Court for the Northern District of California:

8         Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants AstraZeneca Pharmaceuticals LP and

9    AstraZeneca LP (collectively, "the Removing Defendants" or the "AstraZeneca Defendants")

10   hereby remove the state court action, *Kessler, et al. v. AstraZeneca LP, et al.*, from the Superior

11   Court, County of San Francisco, California, to the United States District Court for the Northern

12   District of California, and allege as follows:

13        1.    This civil action commenced by 50 plaintiffs from 26 different states – only one of

14   whom is a California citizen – is one of 15 virtually identical actions brought by two plaintiffs'

15   counsel on behalf of more than 900 plaintiffs, for injuries allegedly arising from the use of the

16   FDA-approved medication, Seroquel® (some of whom, based on a preliminary review, filed

17   other actions arising from the same alleged injuries).

18        2.    **JURISDICTION.**    As shown in Point I.A., *infra*, there is jurisdiction over this

19   removed action pursuant to 28 U.S.C. § 1441 because this action originally could have been filed

20   in this Court pursuant to 28 U.S.C. § 1332(a).  Specifically, this Court has subject matter

21   jurisdiction over this action because there is the requisite diversity of citizenship between each of

22   the properly joined plaintiffs and the defendants, and the amount in controversy exceeds $75,000,

23   exclusive of interest and costs.

24        3.    In the United States District Court for the Middle District of Florida there is a

25   multidistrict litigation ("MDL") established by the Judicial Panel on Multidistrict Litigation for

26   the efficient handling of actions arising from the use of Seroquel®.  *See In re Seroquel Prods.*

27   *Liab. Litig.*, 447 F. Supp. 2d 1376 (J.P.M.L. 2006).  The Removing Defendants intend to identify

28

FBE&M
Lake Merritt Plaza
1999 Harrison Street
Eighteenth Floor
Oakland CA 94612-3541
Phone 510.444.3131

- 2 -

04367 35040 PAS  616521.1

NOTICE OF REMOVAL

1    this action as a potential "tag-along" to the Seroquel MDL proceeding.

2

## I.

3

## JURISDICTIONAL BASES FOR REMOVAL

4    **A.**    **There is Federal Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332(a).**

5          **There is Complete Diversity Between the Properly Joined Plaintiffs and Defendants.**

6        4.    As per the allegations of the Complaint, the plaintiffs are, and at the time of the

7    filing of this action were, citizens of one of the following States: Alabama, Arizona, California,

8    Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Massachusetts, Michigan, Minnesota,

9    Mississippi, Missouri, Nevada, New York, North Carolina, Ohio, Pennsylvania, South Carolina,

10    Texas, Virginia, Washington, West Virginia and Wisconsin.  Compl. ¶¶ 6-55.

11        5.    Defendant AstraZeneca Pharmaceuticals LP is, and at the time of filing of this

12    action was, a Delaware limited partnership.  AstraZeneca Pharmaceuticals LP's general partner is

13    AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden.

14    AstraZeneca Pharmaceuticals LP's limited partners are: Zeneca Inc., a Delaware corporation with

15    its principal place of business in Delaware; Astra USA Inc., a New York corporation with its

16    principal place of business in Delaware; and Astra U.S. Holdings Corporation, a Delaware

17    corporation with it principal place of business in Delaware.  Thus, for jurisdictional purposes,

18    AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York and Sweden.

19        6.    Defendant AstraZeneca LP is, and at the time of filing of this action was, a

20    Delaware limited partnership.  AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals

21    LP.  AstraZeneca LP's sole limited partner, KBI Sub, Inc., is a Delaware corporation with its

22    principal place of business in New Jersey.  Thus, for jurisdictional purposes, AstraZeneca LP is a

23    citizen of Delaware, New York, New Jersey and Sweden.

24        7.    Defendant McKesson Corporation is, and at the time of filing of this action was, a

25    Delaware corporation with its principal place of business in California.  Thus, for jurisdictional

26    purposes, McKesson is a citizen of Delaware and California, but for the reasons set forth below,

27    McKesson was not "properly joined" (*see* 28 U.S.C. § 1441(b)) and, thus its citizenship must be

28    disregarded for purposes of determining the propriety of removal.

FBE&M

Lake Merritt Plaza
1999 Harrison Street
Eighteenth Floor
Oakland CA 94612-3541
Phone 510.444.3131

- 3 -

04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

### i.   The Pharmacy Supplier, McKesson, Was Fraudulently Joined.

8.     The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction simply by naming non-diverse and in-forum defendants.  Under this doctrine, in determining the propriety of removal, a court must disregard the citizenship of those defendants where "plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state. . . ." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  As a leading California treatise explained, the standard to be applied in this Circuit in determining whether an in-state defendant is fraudulently joined is whether there is a "reasonable basis for imposing liability" against that defendant.  *See 1 W. Schwarzer and A.W. Tashima, California Practice Guide: Federal Civil Procedure Before Trial* (2003) at ¶ 2:672.

9.     McKesson was fraudulently joined for three independent reasons:  (1) Plaintiffs fail to allege that McKesson supplied the medication ingested by them, an element essential to establishing that McKesson proximately caused plaintiffs' alleged injuries; (2) there is no reasonable basis for a claim against a supplier of FDA-approved medication to pharmacies, where the supplier did not manufacture or design the product; and (3) the allegations against McKesson are lumped together with those against the alleged pharmaceutical manufacturer.

10.    In denying remand, other federal courts in California have held that McKesson was fraudulently joined.  *Aronis v. Merck & Co., Inc.*, 2005 WL 5518485 (E.D. Cal. 2005); *Skinner v. Warner Lambert Co.*, 2003 WL 25598915 (C.D. Cal. 2003).  In *Aronis*, as in this action, "[p]laintiff ma[de] no allegation that McKesson ever handled the specific pills that were allegedly the cause of her injuries." *Aronis*, 2005 WL 5518485, at *1.  Rather, plaintiffs allege that Seroquel "was manufactured, marketed, distributed and/or sold by AstraZeneca and McKesson Corporation [collectively] to the *general public*."  Compl. ¶ 1 (emphasis added).  Moreover, other courts have denied remand where plaintiffs failed to allege a connection with the in-forum defendant. *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) ("the complaint must allege that the defendant pharmacies sold or supplied Rezulin to plaintiffs. Without drawing that connection, plaintiffs have no way of showing that the pharmacy

FBE&M

LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

1    defendants' acts proximately caused the alleged injuries"; denying remand); *Salisbury v. Purdue*

2    *Pharma, L.P.*, 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001) ("plaintiff does not allege that any of the

3    proposed representative plaintiffs themselves (or, for that matter, any members of the proposed

4    Rule 23 classes) purchased or were otherwise supplied [the medication] by the defendant

5    pharmacies"; denying remand); *Johnson v. Parke Davis*, 114 F. Supp. 2d 522, 524 (S.D. Miss.

6    2000) (denying remand where plaintiffs "failed to establish any connection between themselves

7    and the named [in-forum defendants]").[1]

8         11.    McKesson was fraudulently joined for a second independent reason.  There is no

9    reasonable basis for a claim against a supplier of FDA-approved medication to pharmacies, where

10   the supplier did not manufacture or design the product.  See *Skinner*, 2003 WL 25598915 at *1.

11   Indeed, this is consistent with the well-established rule in California, and around the country, that

12   pharmacists are not liable for dispensing FDA-approved prescription medications.  See *Murphy v.*

13   *E.R. Squibb & Sons, Inc.*, 40 Cal. 3d 672 (1985) ("If pharmacies were held strictly liable for the

14   drugs they dispense, some of them, to avoid liability, might restrict availability by refusing to

15   dispense drugs which pose even a potentially remote risk of harm, although such medications

16   may be essential to the health or even the survival of patients").  If a pharmacy supplier were held

17   strictly liable for the drugs it provides, it might restrict the availability of medications to avoid

18   liability.[2]

19        12.    McKesson was fraudulently joined for a third independent reason.  Plaintiffs here

20   simply lump the allegations against McKesson together with the allegations against the

---

[1] Other courts have held that McKesson was not fraudulently joined in products liability actions. *Maher v. Novartis Pharms. Corp.*, 2007 WL 2330713 (S.D. Cal. 2007), *Martin v. Merck & Company, Inc.*, 2005 WL 1984483 (E.D. Cal. 2005); 2005 WL 5792361 (C.D. Cal. 2005); *Black v. Merck & Co., Inc.*, 2004 WL 5392660 (C.D. Cal. 2004); *In re Fosamax Prods. Liab. Litig.*, 2008 WL 2940560 (S.D.N.Y. 2008). But in each of those actions, plaintiffs either pled or introduced evidence showing that they had ingested medications supplied by McKesson. In addition, a federal court in Pennsylvania recently granted remand in cases naming McKesson, but did not address *Rezulin, Salisbury or Johnson*.  *In re Avandia Marketing Sales Practices and Prods. Liab. Litig.*, 2009 WL 498936 (E.D. Pa. 2009).

[2] We note that plaintiffs' claims may be subject to the law of states other than California, but there is no reasonable basis for a claim under any state's law because the "clear national consensus" shields pharmacies from liability for dispensing prescription medications. *Salisbury*, 166 F. Supp. 2d at 551.

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

1   AstraZeneca Defendants.[3]  Many federal courts have held that allegations against "defendants,"

2   collectively, are insufficient to support remand.  *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 391-

3   93 (5th Cir. 2000) (affirming finding of fraudulent joinder where plaintiffs' claims simply

4   referred to "defendants" collectively and where plaintiffs failed to allege any "particular or

5   specific activity" on the part of each of the in-state defendants); *Staples v. Merck & Co., Inc.*, 270

6   F. Supp. 2d 833, 844 (N.D. Tex. 2003) (allegation that "*Defendants* committed actual fraud"

7   insufficient to warrant remand); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F.

8   Supp. 2d 633, 638 (S.D. Miss. 2002) ("conclusory and generic allegations of wrongdoing on the

9   part of all Defendants. . . . are not sufficient to show that [non-diverse defendant] was not

10  fraudulently joined"); *In re Rezulin Prods. Liab. Litig*, 168 F. Supp. 2d 136, 140 & n.10

11  (S.D.N.Y. 2001) (remand should be denied where "plaintiffs make no specific allegations against

12  [the non-diverse defendant] at all, instead [they] attribut[e] wrongdoing to the collective

13  'defendants'"); *In re Rezulin Prods. Liab. Litig,* 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001)

14  (finding fraudulent joinder where plaintiffs "lump" non-diverse and diverse defendants together

15  "and attribute the acts alleged . . . to the 'defendants' generally"); *Salisbury v. Purdue Pharma,*

16  *L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying remand where the complaint

17  "commonly employs the generic term 'defendants'").  *See also, Sherman v. Stryker*, 2009 U.S.

18  Dist. LEXIS 34105, at *6 (C.D. Cal. Mar. 30, 2009) (in products liability action, dismissing

19  negligent and fraudulent misrepresentation claims where plaintiff "does not differentiate these

20  claims as to [one defendant] and the other defendants" and fails to "specifically allege 'the role of

21  each defendant in each scheme'" (quoting *Lancaster Cmty Hop. v. Antelope Valley Hosp. Dist.*,

22  940 F.2d 397, 405 (9th Cir. 1991)).  Indeed, such allegations are particularly inadequate where, as

23  here, "plaintiffs' complaint commonly employs the generic term 'defendants,' [but] the context

24  and nature of the individual allegations make clear that only the drug companies are targeted."

25  *See Salisbury*, 166 F. Supp. 2d at 550.   McKesson did not manufacture or design Seroquel®

---

26  [3] *See, e.g.*, Compl. ¶ 1 (Seroquel "was manufactured, marketed, distributed and/or sold by
    AstraZeneca and McKesson Corporation [collectively] to the general public") ; *Id.* ¶ 61

27  ("Defendants . . . purported to warn or inform users regarding the risks pertaining to, and
    assuaged concerns about . . . Seroquel"); *Id.* ¶ 127 ("As a direct and proximate result of one or

28  more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants . . .").

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

- 6 -

04367 35040 PAS 616521.1

NOTICE OF REMOVAL

1    (although plaintiffs' allegations against "defendants," collectively, incorrectly suggest otherwise).

2        13.    For the reasons set forth above, there is no reasonable basis for a claim against

3    McKesson, the only in-forum defendant. Thus, McKesson has not been "properly joined" and its

4    presence does not defeat removal.

5                    **ii.    The Non-Diverse Plaintiffs Were Fraudulently Misjoined.**

6        14.    For the reasons set forth above, McKesson was fraudulently joined, and thus its

7    presence should be disregarded for purposes of determining the propriety of removal. In addition,

8    plaintiffs' counsel has misjoined plaintiffs from around the country—some of whom have the

9    same citizenship as some of the defendants—in an improper attempt to destroy federal diversity

10   jurisdiction and avoid transfer of this action to the MDL court.

11       15.    The three New York plaintiffs (Victoria Johansky, George Mastrianni and Carlos

12   Mendez) are citizens of the same state as defendants AstraZeneca Pharmaceuticals LP and

13   AstraZeneca LP. The citizenship of the other 47 plaintiffs is diverse from the citizenship of each

14   of the defendants for purposes of removal.[4]

15       16.    The non diverse New York plaintiffs have no connection with the other plaintiffs

16   from different states — who received medication prescribed by different doctors and dispensed

17   by different pharmacies at different times in different locations. The claims of the non-diverse

18   plaintiffs have been fraudulently misjoined with the claims of the diverse plaintiffs. As set forth

19   below, a well-established line of precedent directs that the presence of the non diverse plaintiffs

20   should be ignored in determining whether there is federal diversity jurisdiction over the remainder

21   of the action.

22       17.    More than a decade ago, the Eleventh Circuit Court of Appeals held that

23   "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a

24   plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d

25   1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F. 3d

26   1069 (11th Cir. 2000). The fraudulent misjoinder doctrine is an extension of the Supreme Court's

---

[4] One of the plaintiffs is a citizen of California. Because McKesson (a citizen of California) was fraudulently joined, the presence of McKesson does not defeat complete diversity as to the California plaintiff.

04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

FBE&M   28

LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

1   recognition that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a

2   resident defendant having no real connection with the controversy." *See Id.* (quoting *Wilson v.*

3   *Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)) (emphasis added).  Even where a colorable

4   claim is stated, the misjoined, non diverse parties have "no real connection with the controversy"

5   involving the diverse parties. *Id.*

6       18.    Joinder of parties under Rule 20 requires: (1) a claim for relief asserting joint,

7   several, or alternative liability and arising from the same transaction, occurrence, or series of

8   transactions or occurrences, and (2) a common question of law or fact. Fed. R. Civ. P. 20.[5]  In

9   *Tapscott*, the claims all arose from the sale of service contracts — indeed, contract all governed

10  by the same Alabama state statutes.  Yet the court concluded that "the alleged transactions

11  involved in the 'automobile' class are wholly distinct from the alleged transactions involved in

12  the 'merchant' class." 77 F.3d at 1360.  And it found that "[s]uch commonality on its face is

13  insufficient for joinder." *Id.* Holding that the "attempt to join these parties is so egregious as to

14  constitute fraudulent joinder," the court affirmed the district court's (i) severance of the claims

15  against the non diverse defendants (the putative automobile class representatives) from those

16  against the diverse defendant (the putative merchant class representative), and (ii) remand of only

17  the claims against the non diverse defendants to state court. *Id.*

18      19.    Similarly, in a case filed by 17 plaintiffs, 13 of whom asserted claims solely

19  against diverse defendants, the Fifth Circuit Court of Appeals recognized (*in dicta*), that the

20  doctrine of fraudulent misjoinder is "a feature critical to jurisdictional analysis." *In re Benjamin*

21  *Moore*, 309 F.3d 296, 298 (5th Cir. 2002).  "[M]isjoinder of plaintiffs should not be allowed to

22  defeat diversity jurisdiction," the court said, and "the point [regarding misjoinder] cannot be

23  ignored, since it goes to the court's jurisdiction and to the defendants' rights to establish federal

24  jurisdiction following removal." *Id.*

25

26  [5] In *Tapscott*, the Court applied Federal Rule 20 to the fraudulent misjoinder analysis. Even if
    California's joinder rule applies, the claims must still be "in respect of or arising out of the same
27  transaction, occurrence, or series of transactions or occurrences." Cal. Code Civ. Proc.,
    § 378(a)(1).  As shown below, and although other courts have held otherwise, joinder of the
    claims of plaintiffs who were prescribed medications at different times by different physicians in
28  different states do not satisfy even the most liberal joinder standard.

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

- 8 -                                          04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

20.     Many district courts around the country have applied the fraudulent misjoinder doctrine.  For example, the Diet Drug MDL court denied remand where, as in this action, out of state plaintiffs were tacked onto a complaint with local plaintiffs in order to destroy diversity.  *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 554584, at \*5 (E.D. Pa. July 16, 1999).  The court held that the "innovative, but unwise pleading strategy" of joining out of state plaintiffs with [local] plaintiffs in an attempt to defeat federal diversity jurisdiction did not satisfy the requirements of Fed. R. Civ. P. 20 that the claims of all plaintiffs joined in a single action arise out of the same "transaction[] or occurrence[]." *Id.* at \*4, \*5 (quoting Rule 20).  As the court explained, "[p]laintiffs [did] not allege that they received the drug[] from the same source or any other similar connection." *Id.* at \*3.  "Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other," the court held that the joinder of non diverse plaintiffs with the local Alabama plaintiffs constituted improper joinder and "wrongfully deprive[d] the Defendants of their right of removal." *Id.*  On that basis, the court denied plaintiffs' motion to remand and retained jurisdiction over the diverse plaintiffs.  The court further held that the non diverse plaintiffs should be severed and dismissed. *Id.* at \*3 4.  See also, *In re Diet Drugs Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) ("the claims of the pharmaceutical plaintiffs who had drugs prescribed by different doctors for different time periods do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences'").

21.     Similarly, in the Rezulin MDL, the court held that New York and New Jersey plaintiffs who had the same citizenship as the manufacturer defendants were misjoined with diverse plaintiffs under Rule 20. *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31496228, at \*1 (S.D.N.Y. Nov. 7, 2002).  In that case, plaintiffs did "not allege that they received [the medication] from the same source, that they were exposed for similar periods of time, or that they suffered similar injuries, if any." *Id.*  Moreover, the court concluded that joinder of these plaintiffs "in no way promotes trial convenience or expedites the adjudication of the asserted claims." *Id.* (citation omitted).  The court severed and remanded the claims of the non diverse plaintiffs "so as to preserve the defendants' right to removal of the remainder of the action" and retained jurisdiction over the diverse plaintiffs. *Id. Accord, In re Prempro Prods. Liab. Litig.*,

FBE&M

LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

04367 35040 PAS 616521.1

**NOTICE OF REMOVAL**

1   417 F. Supp. 2d 1058 (E.D. Ark. 2006) (plaintiffs in a multi-plaintiff action who are citizens of

2   the same state as certain defendants do not defeat jurisdiction over the diverse plaintiffs; court

3   retained jurisdiction over the diverse plaintiffs); *In re Baycol Prods. Litig.*, MDL No. 1431, Case

4   Nos. 03 1173, 03 1174, 03 1175 (D. Minn. Sept. 12, 2003) (plaintiffs who were joined with other

5   plaintiffs from other states to destroy diversity of citizenship, were "fraudulently misjoined";

6   "plaintiffs [were] residents of different states, were prescribed [the medication] at different times

7   and in different amounts by different physicians").[6]

8       22.    Thus, as reflected in the many authorities above, the doctrine of fraudulent

9   misjoinder is a widely recognized basis for the removal of cases, involving multiple plaintiffs

10   whose claims are unrelated and only a few of whom are asserting claims against non diverse

11   defendants.

12       23.    Accordingly, this Court should sever the claims of the 3 non-diverse plaintiffs

13   from those of the 47 diverse plaintiffs and retain jurisdiction over the 47 diverse plaintiffs.  Only

14   the claims of the 5 New York plaintiffs (Victoria Johansky, George Mastrianni and Carlos

15   Mendez) should be remanded to state court.

16       **Amount in Controversy**

17       24.    Plaintiffs seek compensatory damages and allege that they "developed the

18   permanent, life threatening condition of diabetes, pancreatitis, or ketoacidosis."  Compl. ¶ 113.

19   Plaintiffs expressly allege that they seek damages "in excess of $75,000."  *Id.* ¶ 203.  Moreover,

20   plaintiffs seek punitive damages (*Id.*), which are included in the calculation of the amount in

21   

22   ---

[6] *Accord, In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 649 (S.D. Tex. 2005) ("fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction," citing *Benjamin Moore* and *Tapscott*); *Koch v. PLM Int'l, Inc.*, 1997 WL 907917, at *4 (S.D. Ala. Sept. 24, 1997) (denying remand in action originally filed in Alabama state court by Alabama and North Carolina plaintiffs where North Carolina plaintiffs were citizens of same state as certain defendants; out-of-state plaintiffs were named "as a pawn to divest [the] court of subject-matter jurisdiction"); *Lyons v. Am. Tobacco Co., Inc.*, 1997 WL 809677, at *4, *6 (S.D. Ala. Sept. 30, 1997) (denying remand in action originally filed in Alabama state court by Alabama and North Carolina plaintiffs where North Carolina plaintiffs were citizens of same state as certain defendants; joinder of out-of-state plaintiffs was "nothing more than a transparent artifice to defeat the diversity jurisdiction of [the] Court. . . . Defendants will not be deprived of their right to defend themselves in a federal forum through the sophistic pleadings of the plaintiffs").  A copy of the cited Order denying the plaintiffs' Motion to Remand in the *In Re Baycol Products Liability Litigation* MDL is attached hereto as Exhibit 2.

04367 35040 PAS 616521.1

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

**NOTICE OF REMOVAL**

1   controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943); *Ross v.*

2   *First Family Fin. Servs., Inc.*, 2002 WL 31059582, at *8 (N.D. Miss. Aug. 29, 2002)

3   ("unspecified claims for punitive damages sufficiently serve to bring the amount in controversy

4   over the requisite threshold set out in 28 U.S.C. § 1332").

5   **B.    In the Alternative, There is Federal Diversity Jurisdiction Pursuant to 28 U.S.C.**

6   **§ 1332(d)(11)**

7   25.    In addition, there is jurisdiction over this action on the alternative ground that there

8   is federal diversity jurisdiction pursuant to the "mass action" provision of P.L. 109-2 (the "Class

9   Action Fairness Act" or "CAFA"), codified at 28 U.S.C. §§ 1332(d)(11), 1453.  Specifically, (1)

10  because this action is one of 15 virtually identical actions brought by two plaintiffs' counsel on

11  behalf of more than 1,000 plaintiffs, each of these actions should be deemed a "civil action in

12  which monetary relief claims of 100 or more persons are proposed to be tried jointly" (28 U.S.C.

13  §§ 1332(d)(11)(B)(i))[7]; (2) the citizenship of at least one plaintiff is different from that of at least

14  one defendant (28 U.S.C. § 1332(d)(2)(A) & (d)(11)(A)); (3) the matter in controversy, after

15  aggregating the claims of the plaintiffs, exceeds $5 million, exclusive of interest and costs (28

16  U.S.C. § 1332(d)(6) & (d)(11)(A)); and (4) each individual plaintiff's claims exceed $75,000,

17  exclusive of interest and costs (28 U.S.C. § 1332(d)(11)(B)(i)).[8]

18  26.    The Removing Defendants acknowledge that the Court of Appeals has previously

19  rejected a similar basis for federal jurisdiction. *Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th

20  Cir. 2009).  Because defendants in that action have filed a petition for certiorari with the United

21  States Supreme Court (78 U.S.L.W. 3001 (June 24, 2009) (No. 08-1589)), the Removing

22  Defendants preserve this alternative basis for federal jurisdiction in the event that the Supreme

23  Court reverses the holding of the Court of Appeals.

---

[7] Defendants do not concede that the proposed joinder of plaintiffs in a single action is proper. But for purposes of CAFA's "mass action" provision, whether joinder is proper is irrelevant. Rather, plaintiffs' proposed joinder for trial is what determines the propriety of removal. See 28 U.S.C. §§ 1332(d)(11)(B)(i).

[8] 28 U.S.C. § 1332(d)(11)(B)(i) provides that federal jurisdiction exists over "those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [28 U.S.C. § 1332(a)]"–which is currently $75,000, exclusive of interest and costs.

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

04367 35040 PAS  616521.1

NOTICE OF REMOVAL

## II.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

27.     On or about July 9, 2009, plaintiffs filed their complaint.  The AstraZeneca Defendants were served on August 28, 2009.  Thus, the removal is timely under 28 U.S.C. § 1446(b).[9]  Copies of the process and pleadings filed in the state court in the Removing Defendants' possession are attached to this Notice of Removal as Exhibit 1.

28.     To the extent this removal is based on 28 U.S.C. § 1332(a), the consent of fraudulently joined parties is not required.  Pursuant to CAFA (applicable to removals based on CAFA's "mass action" provision), other defendants are not required to consent to the removal of this action.  *See* 28 U.S.C. § 1453(b).

29.     **INTRADISTRICT ASSIGNMENT.**  The United States District Court for the Northern District of California, San Francisco Division, embraces the county in which the state court action was filed, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 84(a), 1441(a) and 1446(a).

30.     The Removing Defendants are filing written notice of this removal with the Clerk of the State Court in which the action was filed, pursuant to 28 U.S.C. § 1446(d).  Copies of the Notice to Adverse Parties of Removal to Federal Court, together with this Notice of Removal, are being served upon plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

31.     If any question arises as to the propriety of the removal of this action, the Removing Defendants request the opportunity to brief any disputed issues and to present oral argument in support of their position that this action is properly removable.

32.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any Defendant's right to assert any defense or affirmative matter including, without limitation, the defenses of (a) lack of jurisdiction over the person; (b) improper or inconvenient venue; (c) insufficiency of process; (d) insufficiency of service of process; (e) improper joinder of claims and/or parties; (f) failure to state a claim; (g) failure to join an

---

[9] Upon information and belief, McKesson has been served, but service on a fraudulently joined defendant does not trigger the 30 day period for removal by a co-defendant. *United Computer Sys. v. A T&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

- 12 -

04367 35040 PAS  616521.1

NOTICE OF REMOVAL

1   indispensable party(ies); or (h) any other procedural or substantive defense available under state

2   or federal law.

3         WHEREFORE, Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP

4   respectfully remove this action from the Superior Court, County of San Francisco, California, to

5   this Court, pursuant to 28 U.S.C. § 1441, *et seq.*

6         DATED this 8th day of September, 2009.

7

8                             FILICE BROWN EASSA & MCLEOD LLP

9

10                          By: _____

11                          PETER A. STROTZ
                        WILLIAM E. STEIMLE

12                          LEE L. KASTER
                        Attorneys for Defendants

13                          ASTRAZENECA LP and ASTRAZENECA
                        PHARMACEUTICALS LP

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

04367 35040 PAS  616521.1

**NOTICE OF REMOVAL**

# EXHIBIT 1

SUM-100

# SUMMONS
### (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>MCKESSON CORPORATION<br><br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>KIMBERLY KESSLER, (List of additional plaintiffs attached) | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Francisco<br>400 McAllister Street, Room 103<br>San Francisco, CA  94102 | **CASE NUMBER:**<br>*(Número del Caso):*<br>CGC-09-490246 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

David C. Andersen, The Miller Firm, LLC, 108 Railroad Ave., Orange, VA 22960   Phone: 540-672-4224

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* JUL 9 - 2009 | GORDON PARK-LI, Clerk, *(Secretario)* | C. Guarina , Deputy | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

   under: ☑ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. www.USCourtForms.com |

1  DAVID C. ANDERSEN (State Bar No. 194095)
2  THE MILLER FIRM, LLC
3  108 Railroad Avenue
4  Orange, VA 22960
5  Telephone: (540) 672-4224
6  Facsimile: (540) 672-3055
7  Email: dandersen@doctoratlaw.com

**F I L E D**
Superior Court of California
County of San Francisco

JUL 9 - 2009

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET
DEC 1 1 2009
DEPARTMENT 212

8
9  SUPERIOR COURT OF THE STATE OF CALIFORNIA
10  COUNTY OF SAN FRANCISCO    SUMMONS ISSUED
11  CIVIL DIVISION
12

| | | |
|---|---|---|
| KIMBERLY KESSLER | : | Case No. **CGC-09-490246** |
| VICTORIA JOHANSKY | : | |
| MARGARET JOHNSON | : | COMPLAINT FOR DAMAGES |
| BETTYE JOINER | : | AND JURY DEMAND |
| ERNEST JONES | : | |
| THOMAS JONES | : | BASED ON: |
| MARK JONES | : | |
| SHERRY JULY | : | 1. NEGLIGENCE |
| JEANETTE KELLIE | : | 2. NEGLIGENT FAILURE |
| CARLA KEMPLIN | : | TO ADEQUATELY WARN |
| JUDY KENNEBREW | : | 3. NEGLIGENT |
| ROBERT KENNEDY, JR. | : | MISREPRESENTATION |
| MICHAEL KILEY | : | 4. BREACH OF EXPRESS |
| DONALD KINCHEN | : | WARRANTY |
| TERRI KING | : | 5. BREACH OF IMPLIED |
| ANGELA KNOPP | : | WARRANTY |
| THOMAS KOENER, JR. | : | 6. STRICT PRODUCTS LIABILITY |
| ALVIN LAFOLLETTE | : | DEFECTIVE DESIGN |
| RICHARD LAKE | : | 7. STRICT PRODUCTS LIABILITY |
| THERON LAWSON | : | MANUFACTURING AND DESIGN |
| BRENT LEHMAN | : | DEFECT |
| TINA LEJMAN | : | 8. STRICT PRODUCTS LIABILITY |
| MICHAEL LEPPANEN | : | FAILURE TO ADEQUATELY |
| LAFREDIA LESTER | : | WARN |
| DIANE LUNKINS | : | 9. FRAUDULENT CONCEALMENT |
| RICHARD MARSHALL | : | 10. UNJUST ENRICHMENT |
| TERESA MARTIN | : | 11. PUNITIVE DAMAGES |
| GEORGE MASTRIANNI | : | |
| LINDA MATHEWS | : | |
| GENNARO MATTIACCIO | : | |
| DIANE MAYS | : | |
| TERESA MCCLEARY | : | |

1

| | |
|---|---|
| 1 | VALERIE MCNEAL : |
| 2 | DOROTHY MEDLIN : |
| 3 | KATHLENE MELVIN : |
| 4 | CARLOS MENDEZ : |
| 5 | JAMES MITHCELL : |
| 6 | ROSANNE MITOROTONDO : |
| 7 | TAMI MOELLENBERNDT : |
| 8 | JEANNIE MOLNAR : |
| 9 | ANITA MONEY : |
| 10 | WANDA MONKS : |
| 11 | MICHELLE MOORE : |
| 12 | DONNA MOORE : |
| 13 | RANDY MOORE : |
| 14 | MISTY MORCEAU : |
| 15 | JILL MORGAN : |
| 16 | ME AE MOSLEY : |
| 17 | ANNIE MURRAY : |
| 18 | TIMOTHY MURRAY : |

Plaintiffs :

ASTRAZENECA LP, :
ASTRAZENECA :
  PHARMACEUTICALS LP, :
MCKESSON CORPORATION :

Defendants :

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by attorneys, THE MILLER FIRM, LLC, as and for the Verified Complaint herein allege upon information and belief the following:

## INTRODUCTION

COMES NOW the Plaintiffs, by and through their undersigned attorney, and for their Complaint against AstraZeneca Pharmaceuticals LP and AstraZeneca, LP, (collectively hereinafter "AstraZeneca") and McKesson Corporation, hereinafter "McKesson") and alleges as follows:

1.    This action is brought by Plaintiffs seeking damages for personal injuries

and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca and McKesson Corporation to the general public.

## JURISDICTION AND VENUE

1.     The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." The Statutes under which this action is brought do not specify any other basis for jurisdiction.

2.     The California Superior Court has jurisdiction over the Defendants because, based on information and belief, each is a corporation and/or entity organized under the laws of the State of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State or has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

3.     Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395 in that Defendant, McKesson Corporation's principal place of business is in this district.

4.     Furthermore Defendants AstraZeneca LP, AstraZeneca Pharmaceuticals LP and McKesson Corporation have purposefully availed themselves of the benefits and the protections of the laws within the State of California. Defendant McKesson has its principal place of business within the state. Defendants AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and McKesson Corporation have had sufficient contact such that the

1   exercise of jurisdiction would be consistent with the traditional notions of fair play and

2   substantial justice.

3        5.      Plaintiffs seek relief that is within the jurisdictional limits of the Court.

4                            **PARTY PLAINTIFFS**

5        6.      The Plaintiff, Kimberly Kessler, is a natural person and a resident of the

6   State of California.

7        7.      The Plaintiff, Victoria Johansky, is a natural person and a resident of the

8   State of New York.

9        8.      The Plaintiff, Margaret Johnson, is a natural person and a resident of the

10  State of Missouri.

11       9.      The Plaintiff, Bettye Joiner, is a natural person and a resident of the State

12  of Mississippi.

13       10.     The Plaintiff, Ernest Jones, is a natural person and a resident of the State

14  of Minnesota.

15       11.     The Plaintiff, Thomas Jones, is a natural person and a resident of the State

16  of Ohio.

17       12.     The Plaintiff, Mark Jones, is a natural person and a resident of the State of

18  Pennsylvania.

19       13.     The Plaintiff, Sherry July, is a natural person and a resident of the State of

20  Texas.

21       14.     The Plaintiff, Jeanette Kellie, is a natural person and a resident of the State

22  of Ohio.

15.     The Plaintiff, Carla Kemplin, is a natural person and a resident of the State of Georgia.

16.     The Plaintiff Judy Kennebrew, is a natural person and a resident of Alabama.

17.     The Plaintiff, Robert Kennedy is a natural person and a resident of the State of Arizona.

18.     The Plaintiff, Michael Kiley, is a natural person and a resident of the State Massachusetts.

19.     The Plaintiff, Donald Kinchen, is a natural person and a resident of the State of Georgia.

20.     The Plaintiff, Terri King, is a natural person and a resident of the State of Kentucky.

21.     The Plaintiff, Angela Knopp, is a natural person and a resident of the State of Pennsylvania.

22.     The Plaintiff, Thomas Koerner, Jr., is a natural person and a resident of the State of Ohio.

23.     The Plaintiff, Alvin LaFollette, is a natural person and a resident of the State of Washington.

24.     The Plaintiff, Richard Lake, is a natural person and a resident of the State of Illinois.

25.     The Plaintiff, Theron Lawson, is a natural person and a resident of the State of Alabama.

26. The Plaintiff, Brent Lehman, is a natural person and a resident of the State of Indiana.

27. The Plaintiff, Tina Lejman, is a natural person and a resident of the State of Alabama.

28. The Plaintiff, Michael Leppanen, is a natural person and a resident of the State of Ohio.

29. The Plaintiff, LaFredia Lester, is a natural person and a resident of the State of Kentucky.

30. The Plaintiff, Diane Lunkins, is a natural person and a resident of the State of Kansas.

31. The Plaintiff, Richard Marshall, is a natural person and a resident of the State of Georgia.

32. The Plaintiff, Teresa Martin, is a natural person and a resident of the State of Ohio.

33. The Plaintiff, George Mastrianni, is a natural person and a resident of the State of New York.

34. The Plaintiff, Linda Mathews, is a natural person and a resident of the State of Wisconsin.

35. The Plaintiff, Gennaro Mattiaccio, is a natural person and a resident of the State of Virginia.

36. The Plaintiff, Diane Mays, is a natural person and a resident of the State of Texas.

COMPLAINT AND DAMAGES

37.   The Plaintiff, Teresa McClery, is a natural person and a resident of the State of Nevada.

38.   The Plaintiff, Valerie McNeal, is a natural person and a resident of the State of Virginia.

39.   The Plaintiff, Dorothy Medlin, is a natural person and a resident of the State of Mississippi.

40.   The Plaintiff, Kathlene Melvin, is a natural person and a resident of the State of Michigan.

41.   The Plaintiff, Carlos Mendez, is a natural person and a resident of the State of New York.

42.   The Plaintiff, James Mitchell, is a natural person and a resident of the State of Missouri.

43.   The Plaintiff, Rosanne Mitorotondo is a natural person and a resident of the State of Iowa.

44.   The Plaintiff, Tami Moellenberndt, is a natural person and a resident of the State of Missouri.

45.   The Plaintiff, Jeannie Molnar, is a natural person and a resident of the State of North Carolina.

46.   The Plaintiff, Anita Money, is a natural person and a resident of the State of Kentucky.

47.   The Plaintiff, Wanda Monks, is a natural person and a resident of the State of Florida.

48.     The Plaintiff, Michelle Moore, is a natural person and a resident of the State of Alabama.

49.     The Plaintiff, Donna Moore, is a natural person and a resident of the State of North Carolina.

50.     The Plaintiff, Randy Moore, is a natural person and a resident of the State of West Virginia.

51.     The Plaintiff, Misty Morceau is a natural person and a resident of the State of Florida.

52.     The Plaintiff, Jill Morgan is a natural person and a resident of the State of North Carolina.

53.     The Plaintiff, Me Ae Mosley, is a natural person and a resident of the State of Mississippi.

54.     The Plaintiff, Annie Murray, is a natural person and a resident of the State of South Carolina.

55.     The Plaintiff, Timothy Murray, is a natural person and a resident of the State of Kansas.

## PARTY DEFENDANTS

56.     AstraZeneca Pharmaceuticals LP, is a Delaware limited partnership doing business in the State of Delaware, and the United States.  AstraZeneca Pharmaceuticals LP, is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger.  AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware, 1800 Concord Pike, P.O. Box 15347, Wilmington, Delaware 19850.  Upon

information and belief AstraZeneca Pharmaceuticals LP's general and limited partners

are: AstraZeneca AB, a Swedish corporation with its principal place of business in

Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in

Delaware; Astra USA Inc., a New York corporation with it's principal place of business

in Delaware; and Astra US Holdings Corporation, A Delaware corporation with it's

principal place of business in Delaware. Therefore, AstraZeneca Pharmaceuticals LP is a

citizen of Delaware, New York and Sweden.

57.    Defendant, AstraZeneca LP, is a Delaware limited partnership doing

business in the State of Delaware and the United States.  AstraZeneca LP's principal

place of business is in Delaware.  Upon information and belief AstraZeneca LP's general

partner is AstraZeneca Pharmaceuticals LP, which as stated above is a citizen of

Delaware, New York, and Sweden.  AstraZeneca LP's sole limited partner, KBI Sub Inc.,

is incorporated in the State of Delaware and its principal place of business is in New

Jersey.  Therefore, AstraZeneca LP is a citizen of Delaware, New York, New Jersey and

Sweden.

58.    At all times material hereto, the Defendant, McKesson, was a corporation

organized, existing and doing business under and by virtue of the laws of the State of

Delaware, with its principal place of business in San Francisco, California.  McKesson is,

and at all times material to this action was, authorized to do business, and was engaged in

substantial commerce and business under the laws of the State of California.

59.    Defendant McKesson Corporation includes any and all parents,

subsidiaries, affiliates, divisions, franchises, partners, joint ventures and organizational

1   units of any kind, their predecessors, successors and assigns and their present officers,

2   directors, employees, agents, representatives and other persons action on their behalf.

3        60.   Plaintiffs are informed and believe, and based thereon allege, that in

4   committing the acts alleged herein, each and every managing agent, representative and/or

5   employee of the defendants were working within the course and scope of said agency,

6   representation and/or employment with the knowledge, consent, ratification, and

7   authorization of the Defendants and its directors, officers and/or managing agents.

8        61.   At all times relevant to this action, Defendants packaged, distributed,

9   supplied, sold, placed into the stream of commerce, labeled, described, marketed,

10   advertised, promoted, and purported to warn or to inform users regarding the risks

11   pertaining to, and assuaged concerns about the pharmaceutical Seroquel.

## BACKGROUND
## STATEMENT OF THE CASE

14        62.   This is an action against the Defendants on behalf of Plaintiffs who were

15   prescribed the prescription drug Seroquel, which is an "anti-psychotic" medication

16   belonging to a class of drugs referred to as "atypical anti-psychotics".

17        63.   Plaintiffs ingested the prescribed dosage of said drug in accordance with

18   the prescription written for the Plaintiffs by licensed medical doctors.

19        64.   Seroquel causes serious and sometimes fatal injuries including but not

20   limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health

21   problems associated with the onset of diabetes including heart disease, blindness, coma,

22   seizures and death.

65.    At all times relevant herein, the Defendants, either directly or through their agents, servants, and employees, designed, manufactured, marketed, advertised, distributed, and sold Seroquel for the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

66.    Those persons who were prescribed and ingested Seroquel, including Plaintiffs herein, have suffered severe and permanent personal injuries, including diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, diabetic coma, and death, as well as other severe and permanent injuries.

## History of Seroquel

67.    In September 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic," Seroquel, for use in the United States. At that time, Seroquel was approved for use in dosages of 25 mg, 100 mg and 200mg tablets.

68.    Seroquel is now available in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg and 400 mg dosages.

69.    The prescription drug Seroquel is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics". Other atypical anti-psychotics include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson) and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

70.    Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia. The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause

11

abnormal thinking and hallucinations. It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as histamine receptors.

71. Seroquel was widely advertised, marketed and represented by the Defendants, in its label, package insert, *Physicians Desk Reference* entry and otherwise, as a safe and effective atypical anti-psychotic.

72. Seroquel was marketed heavily by the AstraZeneca and McKesson Defendants as a safe and effective treatment for schizophrenia and the AstraZeneca and McKesson Defendants' promised fewer side effects than other similar treatments including the other atypical anti-psychotics on the market.

73. The AstraZeneca and McKesson Defendants, through their marketing departments, sales managers, and field sales force and other agents, servants and employees promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions. Through these marketing efforts, the AstraZeneca and McKesson Defendants were able to capture a larger market share in the anti-psychotic market.

74. These marketing efforts were designed and implemented to create the impression in physicians', patients' and plaintiff's minds that Seroquel was safe and effective and that it carried less risk of side effects and adverse reactions than other available treatments.

75. The marketing and promotion efforts of the Defendants, their agents, servants and/or employees served to overstate the benefits of Seroquel and minimize and downplay the risks associated with the drug.

76.     On May 6, 1999, the AstraZeneca Defendants were told by the FDA that materials they continued to distribute, despite a warning letter dated November 24, 1998, were "determined to be false, lacking in fair balance, or otherwise misleading, and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

77.     The FDA had specific objections to numerous promotional materials that they directed be "[I]mmediately discontinued...". These objections involved the AstraZeneca and McKesson Defendants use of promotional materials and included the following:

a.      Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are misleading (e.g., brochures #SQ1035, #SQ1112). Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients. Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

b.      The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown. Therefore, materials that discuss how Seroquel "works" without stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR1048).

c.      Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139). In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g, journal #SQ1088).

78.     The AstraZeneca and McKesson Defendants made affirmative assertions of material fact including but not limited to Seroquel was safe if used as directed, no specific laboratory tests were recommended and Seroquel was safer than other alternative medications

79.     The AstraZeneca and McKesson Defendants knew these assertions to be false or recklessly failed to ascertain their truth or falsity.

80.     The AstraZeneca and McKesson Defendants also fraudulently concealed important safety information from physicians, the FDA, the public and Plaintiffs, including but not limited to the AstraZeneca and McKesson Defendants' awareness of numerous reports of diabetes associated with the use of Seroquel, beyond the background rate, and beyond the rate for other anti-psychotic agents.   The AstraZeneca and McKesson Defendants as manufacturers of ethical drugs had a duty to disclose said information.

81.     The AstraZeneca and McKesson Defendants were aware that the drug caused diabetes mellitus, pancreatitis and ketoacidosis, but the AstraZeneca and McKesson Defendants concealed such information and made misrepresentations that the drug was safe.

82.     The anti-psychotic drug market is one of the largest drug markets worldwide.

83.     The AstraZeneca and McKesson Defendants viewed Seroquel as a blockbuster product with significant projected growth potential.  In 2002 alone, Seroquel reached over $1.1 Billion in sales.

84. Upon information and belief, Seroquel is one of the AstraZeneca Defendants' top-selling drugs.

85. Since the AstraZeneca Defendants introduced Seroquel in 1997, over 24.6 million prescriptions have been made and it has been prescribed to more than 13 million people worldwide.

86. In 2003, approximately seven million prescriptions for Seroquel were dispensed, resulting in more than $2 Billion in sales.

87. In 2005, Seroquel reached approximately $2.7 Billion in annual sales and controlled approximately 31% of the market share for atypical anti-psychotics.

88. Worldwide sales for Seroquel in the first quarter of 2006 compared with sales a year ago in the same period were $807 million, up 27 percent.

### Adverse Effects Related To Seroquel Use

89. In an extensive independent study of over 8,000 New York mental health patients, published in September of 2004, it was found that the risk of diabetes was over 300% higher in patients who took Seroquel.

90. The use of Seroquel is now known by the public, the FDA and physicians to cause serious and sometimes fatal injuries including, but not limited to, ketoacidosis, pancreatitis, and diabetic mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures and death.

91. In August 2003, the AstraZeneca and McKesson Defendants became further aware of the link between Seroquel and diabetes. These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril and Risperdal.

92.     The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol. According to these reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.), 1.27 times more likely, and Risperdal (Johnson & Johnson), 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

93.     Consumers, including Plaintiffs, who have used Seroquel have several alternative atypical anti-psychotic medications in the market that are safer and more effective.

94.     In fact, in December 2000, the AstraZeneca and McKesson Defendants knew that there was no clear evidence that Seroquel was more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

95.     It should be noted that there is a significant difference among the costs of Haldol and Seroquel per month: $35 versus $414, respectively.

**Seroquel Causes Diabetes and Other Serious Injuries**

96.     Shortly after the AstraZeneca and McKesson Defendants began selling Seroquel, the AstraZeneca and McKesson Defendants began to receive reports of consumers who were using Seroquel suffering from hyperglycemia, acute weight gain, exacerbation of diabetes mellitus (hereinafter Adiabetes@), development of diabetes, pancreatitis, and other severe diseases and conditions. The AstraZeneca and McKesson Defendants knew, or should have been aware of these reports.

97.     By July 2001, the AstraZeneca Defendants had received at least 46 reports of patients taking Seroquel and developing hyperglycemia or diabetes mellitus, of which

16

there were 21 cases of ketoacidosis or acidosis and 11 deaths. By December 31, 2003, the AstraZeneca Defendants had received reports of at least 23 additional cases, bringing the total to 69. Most of these patients developed the above conditions within six months of their use of Seroquel.

98.    The AstraZeneca and McKesson Defendants were or should have been aware of studies and articles in 1998 and 1999 confirming a link between drugs like Seroquel and new onset diabetes and permanent hyperglycemia related adverse events. *Wirshing. DA, Novel Antipsychotics and New Onset Diabetes.* Biol. Psychiatry, 1998:15, 44:778-83; *Allison, DB, Antipsychotic-Induced Weight Gain: A Comprehensive Research Synthesis.* Am. J. Psychiatry, 1999:156:1686-96.

99.    Studies conducted in the United States and Europe have established that numerous patients treated with Seroquel experienced a significantly higher incidence of severe and permanent diseases and conditions, including dangerous rises in blood glucose levels.

### Defendants' Failure to Warn of the Dangers of Seroquel

100.    At the time of the prescription of Seroquel to the Plaintiffs, the AstraZeneca and McKesson Defendants had not adequately warned Plaintiffs or their physicians, and/or did not adequately and effectively communicate all warnings about the risk of diabetes, hyperglycemia, diabetic ketoacidosis, or other serious injuries caused by Seroquel

101.    The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise inadequate, both substantively and

graphically, to alert prescribing physicians as well as consumer patients of the actual risks presented by the use of this drug

102.    In fact, the product information section for Seroquel in the *Physicians Desk Reference* for the years 1999, 2000, 2001, 2002, 2003 and 2004, contains no statement in the WARNINGS section to alert anyone of the risks of diabetes, ketoacidosis or pancreatitis associated with the use of Seroquel.

103.    However, in Japan, the AstraZeneca Defendants warned of the risks of diabetes since 2002.

104.    The Japanese "label" for Seroquel provides, and has provided since 2002, a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of monitoring patients on Seroquel.  At the time Plaintiff ingested Seroquel, the AstraZeneca Defendants had not adopted this label for the distribution of Seroquel in the United States.

105.    The label the AstraZeneca Defendants issued in Japan, but not in the United States, warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

   a. Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

   b. Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes;

   c. Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

> d. Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine and how to identify the symptoms of hyperglycemia.

106. On September 11, 2003, the FDA informed the AstraZeneca Defendants that they must make labeling changes to Seroquel, due to an increasing prevalence of diabetes-related illnesses associated with this drug. The following information appeared in the WARNINGS section for Seroquel in the 2005 *Physicians Desk Reference*:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics, including Seroquel. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.
>
> Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

107.   Recently, researchers at the National Institute of Mental Health published a report on atypical anti-psychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine.  This report echoes the conclusions reported in the *British Medical Journal* in 2000.

108.   On November 24, 2006, the FDA released a letter sent by the agency to the AstraZeneca Defendants, where it warned that Defendants were using false and misleading marketing materials that were minimizing the risk of hyperglycemia and diabetes mellitus. Defendants were warned that if they did not cease disseminating the misleading materials Defendants would face regulatory FDA action.

109.   The AstraZeneca and McKesson Defendants misrepresented and failed to appropriately warn consumers, including Plaintiffs, and the medical and psychiatric communities of the dangerous risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent health consequences caused by Seroquel, and consequently placed their profits above the safety of its customers.

110.   By reason of the foregoing, Plaintiffs have been severely and permanently injured and will require constant and continuous medical care and treatment.

### Plaintiff's Use of Seroquel

111.   Plaintiffs were prescribed and began taking Seroquel as prescribed by their prescriber.

112.    Plaintiffs used Seroquel as prescribed and in a foreseeable manner.

113.    As a direct and proximate result of using Seroquel, Plaintiffs were seriously injured and developed the permanent, life threatening condition of diabetes, pancreatitis, or ketoacidosis.

114.    Plaintiffs, as a direct and proximate result of ingesting Seroquel, have suffered severe pain and have sustained permanent injuries and emotional distress.

115.    Had Plaintiffs known of the full extent of the risks and dangers associated with Seroquel, Plaintiffs would not have taken Seroquel.

### EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

116.    The running of any statute of limitation has been tolled by reason of the AstraZeneca and McKesson Defendants' fraudulent conduct.  The AstraZeneca and McKesson Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and their prescribing physicians the true risks associated with taking Seroquel.

117.    As a result of the AstraZeneca and McKesson Defendants actions, Plaintiffs and their prescribing physicians were unaware, and could not reasonably have known or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the AstraZeneca and McKesson Defendants acts and omissions.

118.    Furthermore, the AstraZeneca and McKesson Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the truth, quality and nature of Seroquel.  The AstraZeneca and McKesson Defendants were under a duty to disclose the true character, quality and nature of Seroquel because this

21

was a non-public information over which the AstraZeneca and McKesson Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiffs, medical providers and/or to health facilities. In addition, the AstraZeneca and McKesson Defendants are estopped from relying on any statue of limitation because of their intentional concealment of these facts.

119. Plaintiffs had no knowledge that the AstraZeneca and McKesson Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by the AstraZeneca and McKesson Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. The AstraZeneca and McKesson Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiffs and their medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on the AstraZeneca and McKesson Defendants' representations.

## COUNT I
## NEGLIGENCE

120. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

121. The AstraZeneca and McKesson Defendants were in the business of testing, designing, manufacturing, packaging, promoting, distributing, performing quality assurance evaluations and/or selling Seroquel.

122. The AstraZeneca and McKesson Defendants owed a duty of reasonable care to Plaintiffs to license, test, design, manufacture, package, properly and adequately warn, promote, distribute, perform quality assurance evaluations, and/or sell Seroquel in a safe condition.

123. The AstraZeneca and McKesson Defendants had a duty not to introduce a pharmaceutical drug, such as Seroquel, into the stream of commerce that caused users of said drug, including Plaintiffs, to suffer from unreasonable, dangerous and adverse side effects.

124. The AstraZeneca and McKesson Defendants breached their duty in that they and/or their agents servants or employees failed to exercise reasonable care and were negligent and/or were reckless in the licensing, testing, quality assurance, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of the product.

125. The AstraZeneca and McKesson Defendants' conduct was wanton, reckless and malicious so as to permit the recovery of punitive damages.

126. By reason of the foregoing, Plaintiffs were caused bodily injury, pain, suffering and economic loss.

127. As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to

experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT II
## FRAUD

128.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

129.    As set forth under the facts herein, and pending discovery, the AstraZeneca and McKesson Defendants' representatives through national advertising, promotional campaigns, standardized package inserts, related materials, purchased or subsidized so-called expert opinions both orally and in print and in correspondence to healthcare professionals, and in submissions and reports to the FDA, and product information regarding the characteristics of and the quality of Seroquel, were false, misleading, materially incorrect in fact, and were made knowingly, intentionally, and/or willfully to deceive without regard to the safety and use of the product and were acted on in reasonable reliance by Plaintiffs' prescribing physicians and medical professionals and each Plaintiff, to Plaintiffs substantial detriment and injury.

130.    The AstraZeneca and McKesson Defendants distributed false and misleading materials to physicians, Plaintiffs' prescribers and each individual Plaintiff that the FDA "determined to be false, lacking in fair balance, or otherwise misleading,

24

**COMPLAINT AND DAMAGES**

and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

131. The FDA directed that the AstraZeneca and McKesson Defendants discontinued the use of various promotional materials that were distributed to physicians, Plaintiffs' prescribers and Plaintiffs and stated as follows:

a. Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are misleading (e.g., brochures #SQ1035, #SQ1112). Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients. Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

b. The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown. Therefore, materials that discuss how Seroquel "works" without stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR1048).

c. Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139). In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g, journal #SQ1088).

132. Material information concerning the development of a serious injury related to the use of Seroquel was fraudulently concealed by the AstraZeneca and McKesson Defendants from Plaintiffs' treating physicians and Plaintiffs. The FDA had

received reports of 11 Seroquel related deaths and numerous diabetes related injuries. The AstraZeneca and McKesson Defendants knew or reasonably should have known of this information and this information was not disclosed to Plaintiffs' physicians or to Plaintiffs.

133.    As part of the warning label in Japan, the AstraZeneca and McKesson Defendants were required to disclose that individuals with diabetes or a family history of diabetes should not take Seroquel. This important and material information was not communicated to Plaintiffs' physicians or to Plaintiffs in the United States.

134.    The AstraZeneca and McKesson Defendants intended that the Plaintiffs' physicians and patients, including Plaintiff would rely upon such misrepresentations.

135.    The AstraZeneca and McKesson Defendants' representations as set forth above regarding the quality and characteristics of Seroquel were willful and/or reckless misrepresentations of material fact made with the intent to induce Plaintiffs and Plaintiffs did, without knowledge of their falsity, directly or indirectly, justifiably act upon those willful misrepresentations to Plaintiffs injury.

136.    Plaintiffs relied to their detriment on these material misrepresentations and suffered serious injuries including but not limited to diabetes mellitus, ketoacidosis and pancreatitis.

137.    As a result of the foregoing, Plaintiffs were caused bodily injury, pain, suffering and economic loss.

138.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature;

1  required and will require medical treatment and hospitalization; have become and will

2  become liable for medical and hospital expenses; lost and will lose financial gains; have

3  been and will be kept from ordinary activities and duties and have and will continue to

4  experience mental and physical pain and suffering, disability and loss of enjoyment of

5  life, all of which damages will continue in the future.

6       **WHEREFORE,** Plaintiffs demand judgment against each of the AstraZeneca and

7  McKesson Defendants individually, jointly and/or severally for all such compensatory,

8  statutory and punitive damages available under applicable law, together with interest,

9  costs of suit, attorneys' fees and all such other relief as the Court deems proper.

10  **COUNT III**
11  **FRAUDULENT CONCEALMENT**

12
13       139.   Plaintiffs hereby adopt and incorporate by reference all preceding

14  paragraphs as if fully set forth herein and further alleges as follows:

15       140.   As set forth under the facts herein, and pending discovery, the

16  AstraZeneca and McKesson Defendants fraudulently concealed from the Plaintiffs'

17  physicians and Plaintiffs that Seroquel was dangerous and not as effective for its purpose

18  as represented, and imposed greater risks than disclosed.

19       141.   The AstraZeneca and McKesson Defendants as the manufacturer of

20  ethical drugs were under a duty to timely disclose adequate warnings and information to

21  the medical profession, Plaintiffs' prescribers and Plaintiffs under laws requiring them

22  not to engage in false and deceptive trade practices, and because the AstraZeneca and

23  McKesson Defendants were experts in the field, they are under a continuous duty to keep

24  abreast of scientific developments touching on Seroquel and to know the true state of the

25

1  facts about the dangerous and defective nature of Seroquel.

2      142.   The AstraZeneca and McKesson Defendants had actual knowledge gained

3  from research and adverse event reports and constructive knowledge from scientific

4  literature and other means of communication to know of the true risks of Plaintiffs' use of

5  Seroquel.   This medical information was fraudulently concealed from Plaintiffs'

6  physicians and Plaintiffs.

7      143.   Material information concerning the development of a serious injury

8  related to the use of Seroquel was fraudulently concealed from Plaintiffs' treating

9  physicians and Plaintiffs.  The FDA had received reports of 11 Seroquel related deaths

10  and numerous diabetes related injuries.  The AstraZeneca and McKesson Defendants

11  knew or reasonably should have known of this information and this information was not

12  disclosed to Plaintiffs' physicians or to Plaintiffs.

13      144.   Significantly, the AstraZeneca and McKesson Defendants were required

14  to disclose in Japan specific information that individuals with diabetes or a family history

15  of diabetes should not take Seroquel.  This important and significant information was not

16  communicated to Plaintiffs' physicians or to Plaintiffs in the United States.

17      145.   The AstraZeneca and McKesson Defendants also concealed information

18  that in Japan they had warned, that if a patient developed symptoms of hyperglycemia,

19  then patients should be carefully monitored and Seroquel should be discontinued.  This

20  material information was not disclosed and was fraudulently concealed from Plaintiffs'

21  physicians and Plaintiffs in the United States.

22      146.   These intentional representations suppressed and/or concealed material

23  facts, including but not limited to:

28

COMPLAINT AND DAMAGES

a.   suppressing and/or mischaracterizing the known risks to health and effectiveness;

b.   failing to timely and fully disclose the results of tests and studies on the risks to health and effectiveness;

c.   failing to disseminate adequate warnings which would disclose the nature and extent of the side effects of the product, the risks to health and effectiveness;

d.   failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical testing had not been done;

e.   failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

f.   failing to disclose that alternative products and methods available posed less risks than Seroquel and were at least effective;

g.   failing to conduct adequate tests and studies on the product prior to marketing and making representations as set forth in this complaint;

h.   failing to reveal the full nature and extent of the known risks and hazards associated with Seroquel; and

i.   as otherwise described in this complaint to be discovered during this litigation and to be proven at trial.

147.   Plaintiffs had no knowledge of the dangerous risks associated with the use of Seroquel and relied on the AstraZeneca and McKesson Defendants fraudulent representations and suffered injury as a result thereof.

148.   Plaintiffs could not have taken any action to reasonably discover that the AstraZeneca and McKesson Defendants representations were false and fraudulent.

149.   By reason of the foregoing, Plaintiffs were caused bodily injury, pain, suffering and economic loss.

150.   As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT IV
## FAILURE TO ADEQUATELY WARN

151.   Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

152.   The AstraZeneca and McKesson Defendants, as a manufacturer of pharmaceuticals, had a duty to warn of adverse drug reactions, which they know or have reason to know, are inherent in the use of its pharmaceutical products.

153.   The AstraZeneca and McKesson Defendants failed to adequately warn Plaintiffs, Plaintiffs' physicians and the general public of the risks of Seroquel being used by Plaintiffs.

154.   The AstraZeneca and McKesson Defendants failed to adequately warn of dangers inherent with the use of Seroquel and the AstraZeneca and McKesson Defendants misrepresentations and inadequate disclosures to the Plaintiffs' physicians, Plaintiffs, and the general public, made the product unreasonably dangerous for normal use.

155.   The AstraZeneca and McKesson Defendants are strictly liable in tort to the Plaintiffs upon the grounds that:

   a.   Seroquel was unsafe, defective and unreasonably dangerous for its intended and/or foreseeable uses, by reason of inadequately warning and/or inadequately communicating warnings.

   b.   In distributing, promoting and selling Seroquel not accompanied by adequate warnings of the dangers that were known or should have been known; by failing to provide adequate warnings regarding all known or reasonably knowable potential side effects associated with the use of Seroquel, and the comparative nature, extent, severity, incidence and duration of such adverse effects; failing to provide adequate warnings regarding the signs, symptoms, incidence, scope or severity of the side effects, and/or identify appropriate testing, monitoring and/or remedial action; failing to provide adequate warnings in a timely manner and information necessary for their purposes, thus placing the Plaintiffs and consuming public at risk;

   c.   The AstraZeneca and McKesson Defendants were aware that Seroquel would be used without inspection and study for the defects inherent in Seroquel as alleged, and that given the resources of the Plaintiffs and their physicians, any reasonably anticipated inspection would have failed to detect the defects;

   d.   The AstraZeneca and McKesson Defendants expected and knew that Seroquel would reach the consuming public and Plaintiff. Seroquel was, in fact, received by Plaintiff without change in the condition in which the drug and its labeling was first manufactured and sold.

   e.   Plaintiffs were foreseeable users of the product in its intended manner and suffered serious harm because of said use.

156.   The Seroquel manufactured and/or supplied by the AstraZeneca and McKesson Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the AstraZeneca and McKesson Defendants knew or should have known of the risks of injury from Seroquel use, they failed to provide adequate warnings to consumers of the product, including Plaintiffs, and continued to aggressively promote Seroquel.

157.   By reason of the foregoing, Plaintiffs were caused bodily injury, pain, suffering and economic loss.

158.   As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT V
## STRICT LIABILITY-DEFECTIVE DESIGN

159.   Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

32

COMPLAINT AND DAMAGES

160. The Seroquel manufactured and/or supplied by the AstraZeneca and McKesson Defendants was placed into the stream of commerce in a defective and unreasonably unsafe condition in that the foreseeable risks of its use exceeded the benefits associated with the design or formulation.

161. The AstraZeneca and McKesson Defendants knew or should have known at the time of manufacture that Seroquel was defective in design or formulation and that Sequel created a risk of harm to consumers such as Plaintiffs when used in the way it was intended to be used and in a manner which was reasonably foreseeable by the AstraZeneca and McKesson Defendants.

162. The Seroquel manufactured and/or supplied by the AstraZeneca and McKesson Defendants was placed into the stream of commerce when they knew or should have known of the defective design or formulation and a reasonable person would have concluded that the utility of Seroquel did not outweigh the risk inherent in marketing Seroquel designed in that manner.

163. As set forth in this complaint and otherwise, the AstraZeneca and McKesson Defendants knew of Seroquel's defective nature at the time of its manufacture, but continued to design, manufacture, market, promote, represent to the consuming public, prescribers, and Plaintiffs that Seroquel was safe for the sole purpose of maximizing sales and profits at the expense of the public health and safety in conscious disregard of foreseeable harm caused by Seroquel.

164. By reason of the foregoing, Plaintiffs were caused bodily injury, pain, suffering and economic loss.

165. As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

166. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

167. The AstraZeneca and McKesson Defendants expressly warranted that Seroquel was safe for its intended use and as otherwise described in this complaint. Seroquel did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects and as otherwise set forth in this complaint and/or AstraZeneca and McKesson Defendants' materials.

168.   The express warranties represented by the AstraZeneca and McKesson Defendants were a part of the basis for Plaintiffs use of Seroquel.

169.   At the time of the making of the express warranties, the AstraZeneca and McKesson Defendants had knowledge of the purpose for which the aforestated product was to be used and warranted same to be in all respects safe, effective and proper for such purpose.

170.   Seroquel does not conform to these express representations because Seroquel is not safe or effective and may produce serious side effects, including among other things, diabetes, pancreatitis, ketoacidosis and death.

171.   As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

172.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

173.    The AstraZeneca and McKesson Defendants impliedly warranted that it would sell and deliver Seroquel in a condition that was fit for the particular purposes for which it was intended.

174.    The AstraZeneca and McKesson Defendants knew that Plaintiffs intended to use the Seroquel for the particular purpose of medication and that as such, that the medication needed to be safe for use by Plaintiffs.

175.    Plaintiffs relied upon the AstraZeneca and McKesson Defendants' skill and/or judgment in their ability to furnish suitable Seroquel that was safe for its intended use.

176.    The Seroquel was not safe for its intended use in that it was defective and caused serious side effects and the AstraZeneca and McKesson Defendants therefore breached its implied warranty of fitness for a particular purpose.

177.    As a direct and proximate result of the foregoing, Plaintiffs were caused bodily injury, pain and suffering and economic loss.

178.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have

36

been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

179.   Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

180.   At all times material hereto, the AstraZeneca and McKesson Defendants marketed, sold and distributed Seroquel and knew and promoted the use for which the aforesaid drug was being used by Plaintiffs and impliedly warranted to Plaintiffs that Seroquel was of merchantable quality and fit for the ordinary purpose for which it was intended.

181.   Plaintiffs reasonably relied on the skill, expertise and judgment of the AstraZeneca and McKesson Defendants and its representations as to the fact that Seroquel was of merchantable quality.

182.   The Seroquel manufactured and supplied by the AstraZeneca and McKesson Defendants was not of merchantable quality, as warranted by the AstraZeneca and McKesson Defendants in that the drug had dangerous and life threatening side effects and was thus not fit for the ordinary purpose for which it was intended.

183.   As a direct and proximate result of the foregoing, Plaintiffs were caused bodily injury, pain and suffering and economic loss.

184.   As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca and McKesson Defendants, or some or any one of them, Plaintiffs suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

WHEREFORE, Plaintiffs demand judgment against each of the AstraZeneca and McKesson Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### COUNT IX
### CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS

185.   Plaintiffs hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

186.   The AstraZeneca and McKesson Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of their drugs, including but not limited to the risks of diabetes mellitus and other injuries. Further, the AstraZeneca and McKesson Defendants purposely downplayed and understated the serious nature of the risks associated with use of their drugs in order to increase the sales of those drugs.

38

COMPLAINT AND DAMAGES

187. The AstraZeneca and McKesson Defendants knew or should have known (and would have known had appropriate testing been done) that use of their drugs caused serious and potentially life-threatening side effects.

188. The AstraZeneca and McKesson Defendants engaged in calculated silence despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of their drugs and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiffs.

189. Many safer and less expensive anti-psychotics were available to patients being treated with the AstraZeneca and McKesson Defendants' drugs.

190. The AstraZeneca and McKesson Defendants purposefully downplayed the side effects or provided misinformation about adverse reactions and potential harms from their drugs, and succeeded in persuading large segments of the relevant consumer market to request their drugs and large segments of the medical community to prescribe their drugs, despite both the lack of efficacy and the presence of significant dangers, as set forth herein.

191. The AstraZeneca and McKesson Defendants had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that their drugs were injurious or fatal.

192. The AstraZeneca and McKesson Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of their drugs, including but not limited to the risks of death, disease and other health problems

associated with the use of their drugs. The AstraZeneca and McKesson Defendants have purposely downplayed and/or understated the serious nature of the risks associated with the use of their drugs and have implicitly encouraged the use of these drugs despite knowledge of the dangerous side effects that their drugs presents to the patient population.

193.    The AstraZeneca and McKesson Defendants purposefully and knowingly promoted their drugs for "off label" uses beyond the scope of the FDA approved uses and beyond those uses supported by medical science.

194.    The AstraZeneca and McKesson Defendants unlawfully provided financial incentives to physicians and others to prescribe and approve "off label" uses.

195.    The AstraZeneca and McKesson Defendants knew or should have known, and would have known had appropriate testing been done, that the use of their drugs caused the serious and potentially life threatening side effects.

196.    The AstraZeneca and McKesson Defendants' actions as set forth herein constitute knowing omission, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omission, in connection with the marketing, sale and use of their drugs.

197.    In fact, the Plaintiffs directly and/or through prescribing physicians were induced by the AstraZeneca and McKesson Defendants' omissions and suppression and concealment of facts to use AstraZeneca and McKesson Defendants' drugs.

198.    As a direct and proximate result of the Plaintiffs' ingestion of AstraZeneca and McKesson Defendants' drugs caused by the aforesaid acts and failures to act by the AstraZeneca and McKesson Defendants, Plaintiffs suffered damages including but not

1    limited to past, present and future pain and suffering, serious physical injuries, loss of

2    enjoyment of life, past and future medical expenses, and past and/or future lost wages.

3        199.    The AstraZeneca and McKesson Defendants' conduct is outrageous

4    because of reckless indifference to the health and safety of Plaintiffs and to the public so

5    as to justify an award of punitive damages.

6        **WHEREFORE,** Plaintiffs demand judgment against the AstraZeneca and

7    McKesson Defendants for damages for pain and suffering, loss of enjoyment of life, past

8    and future medical expenses, past and future lost wages, and punitive damages, together

9    with interest from the date of injury and costs.

10                            **COUNT X**
11                     **UNJUST ENRICHMENT**

12        200.    Plaintiffs repeat and reallege the allegations set forth in the paragraphs

13    above as if fully set forth herein.

14        201.    Defendant has been unjustly enriched in the amount of the profits they

15    have earned as a result of Defendant's conduct as alleged herein.

16        202.    Defendant has been unjustly enriched at the expense of and to the

17    detriment of the Plaintiffs.

18        203.    As a direct and proximate cause of Defendants conduct, the Plaintiffs

19    demand judgment against AstraZeneca and McKesson in a sum in excess of $75,000.00;

20    for costs herein incurred; attorneys fees; for such other and further relief as this Court

21    deems just and proper.

22        **WHEREFORE,** Plaintiffs demand judgment against the AstraZeneca and

23    McKesson Defendants for damages for pain and suffering, loss of enjoyment of life, past

1   and future medical expenses, past and future lost wages, and punitive damages, together

2   with interest from the date of injury and costs.

3   **DEMAND FOR JURY TRIAL**

4   Demand is hereby made for a trial by jury.

6   Dated: July 8, 2009

8                      Respectfully submitted,

12                     David C. Andersen (Bar No. 194095)
13                     THE MILLER FIRM, LLC
14                     Attorneys for Plaintiffs
15                     108 Railroad Avenue
16                     Orange, VA 22960
17                     Phone: (540) 672-4224
18                     Fax: (540) 672-3055
19                     Email:dandersen@doctoratlaw.com

42

# EXHIBIT 2



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION     MDL No. 1431
                                              (MJD)

This Document also relates to:           Amended Order

Cindy Dickerson v. Bayer Corporation et al.,       Case No. 03-1173
Verlean Toles v. Bayer Corporation et al.,          Case No. 03-1174
Curtis Coates v. Bayer Corporation et al.,          Case No. 03-1175

---

Joseph C. Langston and John Fletcher Perry, III, The Langston Law Firm and J.P. Sawyer, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

William F. Goodman, III, Rebecca Lee Wiggs, and C. Alleen McLain, Watkins & Eager PLLC for and on behalf of Bayer Corporation.

Christy Jones, Joshua J. Wiener, and Chad R. Hutchinson, Butler Snow O'Mara Stevens and Cannada for and on behalf of GlaxoSmithKline.

---

This matter is before the Court upon Plaintiffs motions for remand.

<u>Background</u>

These actions involves hundreds of plaintiffs who allege they each suffered injury as a result of ingesting Baycol. These plaintiffs are residents of the various states and have asserted claims of strict liability, negligence, breach of warranty and fraud against Defendants Bayer AG, Bayer Corporation and GlaxoSmithKline (the "Seller Defendants"). In addition, seven plaintiffs, each residents of Mississippi, have asserted a claim of medical negligence against their treating physicians, who are also residents of Mississippi.

Bayer Corporation timely removed this action to the United States District Court,

1



District of Mississippi asserting subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a).  In the removal petitions, Bayer asserted that the non-diverse defendants were fraudulently joined, and that the plaintiffs' claims were fraudulently misjoined.

Standard

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims.  28 U.S.C. § 1447(c).  In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence.  In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983)(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

1. Fraudulent Joinder

"Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001).  The burden is on the removing party to show that there is no possibility that the plaintiff will be able to state a cause of action against the resident defendant or that there has been outright fraud in the pleading of jurisdictional facts. Parnas v. General Motors Corporation, 879 F. Supp. 91, 92 (E.D. Mo. 1995).  In determining the propriety of remand, the Court must review plaintiffs' pleading as it existed at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939).

2



Generally, the claims asserted against the Seller Defendants are based on allegations that these Defendants falsely and deceptively misrepresented material facts concerning Baycol's risks, and that Baycol is defective, unsafe and unreasonably dangerous, and that the Seller Defendants failed to warn of Baycol's risks. With respect to the medical negligence claims against the physicians, Plaintiffs allege:

> Said Defendants knew, or should have known, of the dangerous side effects of this medication, and their prescribing said medication in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under the like or similar circumstances and rises to the level of medical negligence.

Dickerson Complaint, ¶ 54, Toles Complaint, ¶ 63, Coates Complaint, ¶ 57.

When considering all of the allegations in the above Complaints, the main thrust of which is that the Seller Defendants misrepresented the safety of Baycol and failed to warn of the serious risks associated with Baycol, the Court finds that Plaintiffs have failed to sufficiently plead that the named treating physicians proximately caused Plaintiffs' injuries, or that the physician knew or should have known of Baycol's risks. Having failed to alleged a cause of action against the physicians, the Court finds that the non-diverse physicians were fraudulently joined, and their citizenship will not be taken into account in determining diversity.

2. Fraudulent Misjoinder

In addition, there are two Plaintiffs, Phyllis Thurau, joined in the Coates action and Connie Brown, joined in the Toles action, that are residents of Pennsylvania. As Bayer Corporation has its principal place of business in Pennsylvania, Plaintiffs argue that diversity is destroyed.

3



The Seller Defendants argue that the claims of these plaintiffs were fraudulently misjoined with the remaining Plaintiffs and that such misjoinder cannot defeat diversity jurisdiction. In this Court's previous opinion, Blakeney v. Bayer Corp. et al., Civ. No. 03-2931 (D. Minn. August 29, 2003), the Court held that misjoined plaintiffs will not defeat diversity jurisdiction. Rather, the remedy is severing the claims of the non-diverse plaintiff and defendant.

In the above cases, the plaintiffs are residents of different states, were prescribed Baycol at different times and in different amounts by different physicians, and suffered different injuries. The fact that they each allege the same claims against the Seller Defendants is not sufficient to establish joinder under Fed. R. Civ. P. 20. As the claims of Phyllis Thurau and Connie Brown have been fraudulently misjoined, their claims will be severed, and remanded to state court. As there is diversity among the remaining plaintiffs and defendants, this Court has subject matter jurisdiction over their claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff Phyllis Thurau is severed from the Coates action, Case No. 03-1175 and remanded to the Circuit Court of Humphreys County, Mississippi and that Connie Brown is severed from the Toles action, Case No. 03-1174, and remanded to the Circuit Court of Marshall County, Mississippi. Plaintiffs' motions to remand with respect to the remaining plaintiffs are DENIED.

Date: Sept. 12   2003

Michael J. Davis
United States District Court

4